UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No.   09-10138 RGS |
| JOSHUA WALSH | ) ) | |
| Defendant. | ) ) | |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States of America hereby submits its sentencing memorandum regarding defendant Joshua Walsh.  In particular, the government disputes defendant's argument regarding his career offender status and the proposed sentence.

## I.  WALSH WAS A FULL PARTICIPANT[1]

When Joseph Centola and Joshua Walsh entered the East Cambridge Savings Bank branch in Medford, Massachusetts on February 10, 2009, they both carried demand notes.  Both were dressed in a plain manner so as to minimize the likelihood of capture.  Each approached a different bank employee.  None of the bank employees indicated that Walsh's co-defendant, Joseph Centola, was directing Walsh's activity.

Walsh approached a bank employee at the same time as Centola and passed her a demand note. The demand note read:   "GIVE ME ALL $20'S $50'S $100'S - NO DYE - NO JOKE- HURRY UP! - SECOND RESERVE DRAW".  The bank employee told Walsh she did not have any money. Walsh did not leave the bank but instead approached the teller to whom Centola had passed a note and paced back and forth while looking over the teller counter. According to the

---

[1] The government's version of the facts are set forth in the Pre-Sentence Report ("PSR") and will not be restated here except as relevant.

victim teller, she thought Walsh had a gun. The victim teller then opened her drawer on two occasions, the second time in response to Centola's repeated demand. She handed Centola approximately $1,991.00; Centola and Walsh then fled the bank together.

Contrary to defendant's argument that he was a minor participant who did and said nothing, Walsh was a full participant. He went in with a prepared demand note which he presented to a teller. The only reason he did not get money is because that teller did not have any at that time. Walsh waited while Centola got cash from the teller he approached. Throughout the robbery, Walsh and Centola acted in concert.[2]

## II.  WALSH IS A CAREER OFFENDER

Walsh argues that his prior Massachusetts conviction for resisting arrest does not qualify as a career offender predicate under §4B1.1. Walsh's challenge to his career offender status is foreclosed by the First Circuit's decision in *United States v. Almenas*, 553 F 3d 27, 32-35 (1st Cir. Jan. 12, 2009). He argues that his 2006 and 2008 convictions for resisting arrest, in violation of Mass. Gen. Laws ch.268, §32B, do not qualify as "crimes of violence" within the meaning of the career offender guideline, §4B1.1. In *Almenas*, however, this Court considered, and flatly rejected, this precise argument. 553 F.3d at 32-35 (concluding that Massachusetts conviction for resisting arrest qualifies as "crime of violence" for purposes of career offender guidelines). Accordingly, this court must overrule Walsh's objection and sentence him as a

---

[2] Walsh's citation of his co-defendant's implausible claim that the co-defendant (Centola) robbed the bank to pay a loan does nothing to diminish his role. See defendant's sentencing memorandum at 4.

career offender.[3]

### III. WALSH SHOULD BE GRANTED A MODEST DEPARTURE

In his sentencing memorandum, Walsh argues that his criminal history overstates his likelihood of recidivism and his danger to society in general. While the government rejects the approach taken by defendant, which is to argue that the facts as contained in the PSR regarding the prior offenses are inaccurate because, essentially, he disputes them, the government acknowledges that much of Walsh's criminal history is derived from his juvenile conduct.

The problems for Walsh are: (a) his juvenile conduct counts and is serious; and (b) he is a career offender and so his sentencing guidelines are governed by Chapter 4 and not by his general criminal history calculation. Thus, even if the Court deems his criminal history to be

---

[3] It is surprising that defendant omitted any reference to *Almenas* since it was decided over a year ago and is directly on point. Nor is the result in that case brought into question by *Chambers v. United States*, 129 S.Ct. 687 (2009), which was announced the day after *Almenas*. As the First Circuit stated in denying a petition for rehearing in *Almenas*, *Chambers* does not cast doubt on its holding that a Massachusetts conviction for resisting arrest qualifies as a crime of violence under the career offender guideline:

> In his petition for rehearing, [Almenas] asserts that *Chambers v. United States*, 129 S.Ct. 687 (2009), issued after the decision in this case, requires a different outcome. On the contrary, the Massachusetts resisting arrest statute, which formed part of the basis for the career offender determination, expressly requires that the defendant used or threatened to use physical force or violence, or that the defendant used any other means which created a substantial risk of causing bodily injury. Mass. Gen. Laws. Ch. 268, § 32B. *Chambers* does not suggest that further empirical analysis is necessary to determine whether a person who was in fact convicted under the Massachusetts law was 'significantly more likely than others to attack, or physically to resist an apprehender.' 129 S.Ct. at 687.

*United States v. Almenas*, No. 06-2513, Order (1st Cir. Mar. 4, 2009). *See also United States v. Glover*, 558 F.3d 71,79-82 (1st Cir. 2009) (finding, post-*Chambers*, that Massachusetts conviction for assault and battery with dangerous weapon qualifies as "crime of violence" for career offender purposes without assessment of actual risk based on empirical data).

overstated, he still qualifies as a career offender. Neither the length of his potential sentence nor the argument that it overstates his criminal history (see defendant's objection #5, PSR p. 43) are sufficient grounds for finding that the defendant is not a career offender.

Instead, the Court should consider all of the factors set out in 18 U.S.C. § 3553, including both general and specific deterrence, and sentence defendant accordingly. The government anticipates that it will recommend a moderate downward departure at the sentencing hearing.[4]

                                              Respectfully submitted,

                                              CARMEN M. ORTIZ
                                              United States Attorney
By:

                                              */s/ thomas e. kanwit*
                                              Thomas E. Kanwit
                                              Assistant U.S. Attorney
                                              (617) 748-3271

Dated:   January 19, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date

                                              */s/ thomas e. kanwit*
                                              Thomas E. Kanwit

---

[4] The government is not intentionally being coy about its recommendation, but the Assistant U.S. Attorney has not received formal approval for a proposed recommendation at this time.